George Hofmann (10005)
Jeffrey L. Trousdale (14814)
**Cohne Kinghorn, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, Utah  84111
Telephone: (801) 363-4300
Facsimile: (801) 363-4378

Attorneys for Pacific WebWorks, Inc.

**IN THE UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| In re: | Bankruptcy No. 16-21223 (WTT) |
|---|---|
| PACIFIC WEBWORKS, INC., | Chapter 11 |
| Debtor. | |

**OBJECTION TO PROOF OF CLAIM 6-1 FILED BY**
**PRINCIPAL DEVELOPMENT, LLC**

1.   Pacific WebWorks, Inc. (the "Debtor") objects to the proof of claim filed by Principal Development, LLC ("Principal") (Claim 6-1).

**OBJECTION TO CLAIM NUMBER 6-1**

**Claimant – Principal Development, LLC**
2157 Lincoln Street
Salt Lake City, Utah 84106

**GENERAL BACKGROUND AND JURISDICTION**

2.   The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.   The Debtor commenced this case by filing a voluntary petition under

{00295314.DOC /}

chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on February 23, 2016 (the "Petition Date").

4. The deadline to file proofs of claim identified on the Notice of Meeting of Creditors was June 29, 2016.

## BACKGROUND RELATED TO THE CLAIM

5. On March 31, 2016, Principal filed proof of claim number 6-1 (the "Claim") in the amount of $127,950.00. The Claim identifies the basis of the Claim as a lease agreement, dated June 13, 2013 (the "Lease"), between the Debtor as tenant and Development Specialties, Inc. ("DSI") as landlord.

6. In the years preceding the Petition Date, pursuant to the Lease, the Debtor occupied approximately 4000 square feet of space in the nonresidential real property located at 230 West 400 South, Salt Lake City, Utah (the "Leased Premises").

7. The Lease provided for monthly rent payments by the Debtor in the following amounts: $4,300 per month in Year 1; $4,425 per month in Year 2; $4,550 per month in Year 3; $4,700 per month in Year 4; and $4,825 per month in Year 5.

8. The Lease was set to expire on May 31, 2018.

9. On June 13, 2016, the Debtor filed its Motion to Reject Unexpired, Nonresidential Real Property Lease (the "Lease Rejection Motion") due to its cessation of ongoing business in the Leased Premises.

10. The Court entered an Order granting the Lease Rejection Motion on July 5, 2016, in which the Court authorized the Debtor's rejection of the Lease effective July 11, 2016, and set a claims bar date of August 15, 2016, by which Principal was

required to file a proof of claim for damages—if any—arising out of the rejection of the Lease.

11.  Principal did not file a proof of claim for damages arising out of the rejection of the Lease, and as of the date of this Motion Principal has not supplemented or amended its original Claim in any way.

12.  The Debtor vacated the Leased Premises by July 11, 2016.

13.  The amount of Principal's Claim is equivalent to the amount that would be owed on monthly payments under the Lease through May 31, 2018, assuming that the Debtor had no defenses under the Lease, state law, common law, or the Bankruptcy Code.

14.  Section 14.3 of the Lease states the following:

**Tenant's obligation to correct the default and to continue making the remainder of the lease payments due on the Leased Premises shall not terminate on termination of possession, but shall be ameliorated to the extent that Landlord is able, by the use of reasonable diligence, to obtain the correction of the default and lease the Leased Premises to a new tenant.**

15.  Upon information and belief, immediately after the Debtor vacated the Leased Premises, Principal or DSI leased a portion of the Leased Premises to Intellipay, Inc. ("Intellipay"), the Debtor's former subsidiary.[1]

16.  Upon information and belief, Principal or DSI has leased all or some of the remaining portion of the Leased Premises to new tenants.

---

[1] The Debtor sold Intellipay under § 363 of the Bankruptcy Code, pursuant to an Order entered on April 21, 2016 [Docket No. 52].

**ARGUMENT**

The Debtor seeks a determination that Principal's Claim should be disallowed entirely pursuant to the common law doctrine of mitigation, or alternatively, reduced under § 502(b)(1) and (6) of the Bankruptcy Code and § 14.3 of the Lease.

**I.    The Post-Petition Rent Claim is Capped Under § 502(b)(6) of the Bankruptcy Code.**

On its face, Principal's Claim is based on the post-rejection rent that the Debtor would owe under the Lease if the Debtor had no legal defenses to payment of the same. Section 502(b)(6) provides that the Court shall allow a claim except to the extent that:

> if such claim is the claim of a lessor for damages resulting from the termination of a lease of real property, such claim exceeds—(A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—(i) the date of the filing of the petition; and (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates.

Following the formula set forth in § 502(b)(6), the greatest amount the Debtor could owe for post-rejection damages resulting from the termination of the Lease is $56,400[2]; not the $127,950.00 that Principal asserts in its Claim. The Debtor requests that the Court reduce the Claim to an amount no greater than $56,400.00.

---

[2] The Debtor's calculation of damages is based on the sum of one year's rent from the Petition Date, which is the greater amount from the two formulas set forth in § 502(b)(6).

II. **Principal's Claim Should be Disallowed or Reduced Due to Mitigation and as Provided for in the Lease.**

"A properly filed proof of claim is prima facie evidence of the validity and amount of the claim." Agricredit Corp. v. Harrison (In re Harrison), 987 F.2d 677, 680 (10th Cir. 1993) (citing Bankr.R. 3001(f)). "It is deemed allowed absent objection." Id. (citing Section 502(a)). "If objection is made to the proof of claim, the creditor has the ultimate burden of persuasion as to the validity and amount of the claim." Id. (citing In re Padget, 119 B.R. 793, 798 (Bankr. D. Colo.1990)). Section 502(b)(1) of the Bankruptcy Code provides that a claim shall be allowed except to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law . . . ." Principal cannot carry its burden as to why the Claim should not be reduced under § 14.3 of the Lease and under the common law doctrine of mitigation of damages.

The Debtor acknowledges that its rejection of the Lease constitutes a default under the Lease. Section 14.3 of the Lease ameliorates post-default damages "to the extent that Landlord is able, by the use of reasonable diligence, to obtain the correction of the default and lease the Leased Premises to a new tenant." Intellipay remained in a portion of the Leased Premises after the Debtor sold Intellipay, and upon information and belief, Intellipay continues to occupy a portion of the Leased Premises as of the date of the filing of this Motion.

The Debtor is also informed and believes that Principal or DSI are leasing additional portions, and perhaps the entirety, of the remainder of the Leased Premises to new tenants as of the date of this Motion. Under § 14.3 of the Lease, the Debtor is

not liable for rent owed to the extent that Principal has leased the Leased Premises to new tenants and is receiving rent from those new tenants.

To the extent that Principal is not leasing the Leased Premises to new tenants, it must show why the common law doctrine of mitigation should not apply to its Claim. In Utah, a party has an active duty to mitigate any damages suffered as a result of the rejection of a contract. Madsen v. Murrey & Sons Co., 743 P2d 1212, 1214 (Utah 1987). "No recovery may be had for losses which the person injured might have prevented by reasonable efforts and expenditures." Id. Even if Principal has not leased the Leased Premises to new tenants, it must show what reasonable efforts and expenditures it took to mitigate the damages caused by the Debtor's rejection of the Lease. If Principal cannot show the steps it took to mitigate the damages, its Claim should be disallowed entirely.

Principal's Claim should be disallowed. In the alternative, and only if it files a response to this Objection, Principal's Claim should be reduced in an amount to be proven at an evidentiary hearing, but no greater than: (i) the amount owed by the Debtor for any time between July 11, 2016, and the date upon which new tenants occupied the Leased Premises; plus (ii) the amounts owed by the Debtor under the Lease less the amounts owed by the new tenants who now occupy the Leased Premises, subject to the cap under § 502(b)(6).

**PRAYER FOR RELIEF**

For the foregoing reasons, and pursuant to 11 U.S.C. § 502(b)(1) and (6), the Debtor respectfully requests that Principal's Claim be disallowed entirely. Alternatively,

and only if Principal files a response to this Objection, the Debtor requests that the Court reduce the Claim to the lesser of (i) $56,400.00, pursuant to § 502(b)(6); or (ii) an amount to be proven at an evidentiary hearing, but no greater than: (i) the amount of rent owed by the Debtor for any time between July 11, 2016, and the date upon which new tenants occupied the Leased Premises plus the amounts owed by the Debtor under the Lease less the amounts owed by the new tenants who now occupy the Leased Premises, and grant such other relief as the Court deems equitable or just.

**DATED**:    September 12, 2016

                **COHNE KINGHORN, P.C.**

                /s/ Jeffrey L. Trousdale
                George Hofmann
                Jeffrey L. Trousdale
                *Attorneys for Pacific WebWorks, Inc.*