George Hofmann (10005)
Jeffrey L. Trousdale (14814)
**Cohne Kinghorn, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300
Facsimile: (801) 363-4378

Attorneys for Pacific WebWorks, Inc.

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| In re | Bankruptcy No. 16-21223 (WTT) |
|---|---|
| PACIFIC WEBWORKS, INC., | Chapter 11 |
| Debtor. | |

### NOTICE OF FILING REDLINED VERSIONS OF
### PLAN AND DISCLOSURE STATEMENT

PLEASE TAKE NOTICE that on October 4, 2016, Pacific WebWorks, Inc. filed with the

United States Bankruptcy Court for the District of Utah the most recent version of its proposed

Disclosure Statement and related Plan of Liquidation.  Attached as Exhibit 1 is a redlined

Disclosure Statement, marked to show changes since the last version filed with the Court on

August 29, 2016, which includes as an exhibit a redlined Plan of Liquidation, marked to show

changes since the last version filed with the Court on August 19, 2016.  These redlines are filed

without exhibits, except for Exhibit A to the Disclosure Statement (which is the redlined Plan of

Liquidation).

Dated:  October 4, 2016

COHNE KINGHORN, P.C.


  /s/  George Hofmann
GEORGE HOFMANN
Attorneys for Debtor

## DESIGNATION OF PARTIES TO BE SERVED

The undersigned hereby designates the following parties to be served a copy of the foregoing **ORDER APPROVING EMPLOYMENT OF MITCHELL BARLOW & MANSFIELD, P.C. AS SPECIAL COUNSEL PURSUANT TO BANKRUPTCY CODE § 327 (e)**

**By Electronic Service**:  I certify that the parties of record in this case as identified below, are registered CM/ECF users, and will be served notice of entry of the foregoing Order through the CF/ECF System:

- Brett N. Anderson          bretta@blackburn-stoll.com
- Andrew V. Collins          acollins@mbmlawyers.com
- Christopher S. Feuz        cfeuz@mbmlawyers.com
- George B. Hofmann          ghofmann@cohnekinghorn.com,
                             dhaney@cohnekinghorn.com;
                             jthorsen@cohnekinghorn.com
- J. Derek Kearl             jdkearl@hollandhart.com, jcwilliams@hollandhart.com
- Peter J. Kuhn tr           Peter.J.Kuhn@usdoj.gov, James.Gee@usdoj.gov;
                             Lindsey.Huston@usdoj.gov;
                             Suzanne.Verhaal@usdoj.gov
- Adam H Reiser              areiser@cohnekinghorn.com
- Steven C. Strong           sstrong@cohnekinghorn.com,
                             jhasty@cohnekinghorn.com
- Jeffrey L. Trousdale       jtrousdale@cohnekinghorn.com,
                             nlakey@cohnekinghorn.com
- United States Trustee      USTPRegion19.SK.ECF@usdoj.gov

**By U.S. Mail**:  In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

Anne Ashby
7667 Centerpoint Road
Auburn, NY 13021

Gil A Miller
Rocky Mountain Advisory, LLC
215 South State Street, Suite 550
Salt Lake City, UT 84111

/s/ Jeffrey Trousdale

{00292427.DOC /}

# EXHIBIT 1
## (Redlined Disclosure Statement)

{00299707.DOC /}

**THIS PROPOSED DISCLOSURE STATEMENT HAS NOT BEEN APPROVED UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION FOR USE IN CONNECTION WITH THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OF REORGANIZATION DESCRIBED HEREIN.  ACCORDINGLY, THE FILING AND DISSEMINATION OF THIS PROPOSED DISCLOSURE STATEMENT ARE NOT INTENDED AND SHOULD NOT IN ANY WAY BE CONSTRUED AS A SOLICITATION OF VOTES ON THE PLAN, NOR SHOULD THE INFORMATION CONTAINED HEREIN BE RELIED UPON FOR ANY PURPOSE BEFORE A DETERMINATION BY THE BANKRUPTCY COURT THAT THE PROPOSED DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION.**

George Hofmann (10005)
Steven C. Strong (6340)
Jeffrey L. Trousdale (14814)
**Cohne Kinghorn, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, Utah  84111
Telephone:   (801) 363-4300

Attorneys for Pacific WebWorks, Inc.

### IN THE UNITED STATES BANKRUPTCY COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re | Case No. 16-21223 (WTT) |
| PACIFIC WEBWORKS, INC., | Chapter 11 |
| Debtor. | |

### DISCLOSURE STATEMENT FOR DEBTOR'S CHAPTER 11 PLAN OF LIQUIDATION

October 6, 2016

## IMPORTANT

---

THIS DISCLOSURE STATEMENT IS SUBMITTED TO ALL CREDITORS OF PACIFIC WEBWORKS, INC. ENTITLED TO VOTE ON THE PLAN OF LIQUIDATION DESCRIBED HEREIN, AND CONTAINS INFORMATION THAT MAY AFFECT YOUR DECISION TO ACCEPT OR REJECT THE PLAN. THIS DISCLOSURE STATEMENT IS INTENDED TO PROVIDE ADEQUATE INFORMATION REGARDING THE PLAN AS REQUIRED BY THE BANKRUPTCY CODE. ALL CREDITORS ARE URGED TO READ THE DISCLOSURE STATEMENT AND ATTACHMENTS WITH CARE AND IN THEIR ENTIRETY.

---

### 1.

### PRELIMINARY STATEMENTS

**1.1    General Information Concerning Disclosure Statement and Plan**

Pacific WebWorks, Inc., the debtor and debtor-in-possession in the above-captioned bankruptcy case (the "Debtor"), submits this Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code and Rule 3016 of the Federal Rules of Bankruptcy Procedure. The purpose of this Disclosure Statement is to disclose information adequate to enable creditors who are entitled to vote to arrive at a reasonably informed decision in exercising their rights to vote on the Debtor's Chapter 11 Plan of Liquidation (the "Plan"). A copy of the Plan is attached hereto as Exhibit A. Capitalized terms used but not defined in this Disclosure Statement shall have the meanings assigned to them in Article I of the Plan or in the Bankruptcy Code and Bankruptcy Rules.

The Debtor has promulgated the Plan consistent with the provisions of the Bankruptcy Code. The purpose of the Plan is to provide a better recovery for creditors than other alternatives—considering the assets, liabilities and anticipated funds of the Debtor available for distribution. The Debtor believes that the Plan will maximize the recovery for all Classes of Claims.

This Disclosure Statement is not intended to replace a careful review and analysis of the Plan, including the specific treatment of Claims under the Plan. The Disclosure Statement is submitted as an aid and supplement to your review of the Plan intended to explain certain terms and provisions of the Plan. Every effort has been made to explain fully various aspects of the Plan as they affect creditors. If any questions arise, the Debtor urges you to contact its counsel to attempt to resolve your questions. You may, of course, wish to consult with your own counsel.

### 1.2    Disclaimers

NO SOLICITATION OF VOTES HAS BEEN OR MAY BE MADE EXCEPT PURSUANT TO THIS DISCLOSURE STATEMENT AND SECTION 1125 OF THE BANKRUPTCY CODE, AND NO PERSON HAS BEEN AUTHORIZED TO USE ANY INFORMATION CONCERNING THE DEBTOR TO SOLICIT ACCEPTANCES OR REJECTIONS OF THE PLAN OTHER THAN THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.  CREDITORS SHOULD NOT RELY ON ANY INFORMATION RELATING TO THE DEBTOR OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS ATTACHED.

EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT AND EXHIBITS, NO REPRESENTATION CONCERNING THE DEBTOR OR THE PLAN IS AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN.  ANY REPRESENTATIONS MADE TO SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR.

UNLESS ANOTHER TIME IS SPECIFIED, THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF.  NEITHER DELIVERY OF THIS DISCLOSURE STATEMENT NOR ANY EFFORTS TO OBTAIN APPROVAL OF THE DISCLOSURE STATEMENT AND PLAN SHALL UNDER ANY CIRCUMSTANCES IMPLY THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE OF THE DISCLOSURE STATEMENT OR SINCE THE DATE THE MATERIALS RELIED UPON IN PREPARATION OF THE DISCLOSURE STATEMENT WERE COMPILED.

WHILE THE INFORMATION PROVIDED HEREIN IS BELIEVED RELIABLE, THE DEBTOR HAS NOT UNDERTAKEN TO VERIFY OR INVESTIGATE SUCH INFORMATION, AND MAKES NO REPRESENTATION AS TO THE ACCURACY OR COMPLETENESS OF THE INFORMATION.

DISTRIBUTION OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS ANY REPRESENTATION OR WARRANTY, EITHER EXPRESS OR IMPLIED, BY THE DEBTOR OR ITS PROFESSIONAL CONSULTANTS THAT THE PLAN IS FREE FROM RISK, THAT THE ACCEPTANCE OF THE PLAN WILL RESULT IN A RISK-FREE RESTRUCTURING OF THE DEBTOR'S OBLIGATIONS OR THAT THE OBLIGATIONS OF THE DEBTOR AS RESTRUCTURED BY THE PLAN WILL BE FULLY PERFORMED IN THE FUTURE WITHOUT RISK OF FURTHER DEFAULT.

THE APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTEE OF THE ACCURACY OR THE COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT AND THE PLAN ATTACHED SHOULD BE READ IN THEIR ENTIRETY BEFORE VOTING ON THE PLAN.  FOR THE CONVENIENCE OF HOLDERS OF CLAIMS AND INTERESTS, CERTAIN TERMS OF THE PLAN ARE SUMMARIZED IN THIS DISCLOSURE STATEMENT, BUT ALL SUMMARIES ARE

**QUALIFIED IN THEIR ENTIRETY BY THE PLAN, WHICH CONTROLS IN CASE OF ANY INCONSISTENCY.**

## 2.

## BRIEF SUMMARY OF THE PLAN

### 2.1    History of the Debtor

The Debtor was a publicly traded company formed in 1999, headquartered in Salt Lake City, Utah.  The Debtor was an application service provider and software development firm that developed business software technologies and services for business merchants and organizations using the internet and other technologies.  It specialized in turnkey applications allowing small to medium sized businesses to expand over the internet.

The Debtor commenced this bankruptcy case on February 23, 2016, by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Prior to the Petition Date, the Debtor was involved in litigation brought by certain shareholders against some of the Debtor's officers and directors alleging, *inter alia*, breach of fiduciary duty and misappropriation of corporate opportunity (the "Shareholder Claims"). The Shareholder Claims had a significant negative effect on the Debtor's business and cash flow and prevented the Debtor from engaging in a merger, sale, refinancing, or other transaction which would have enabled the Debtor's business to recover.

The Shareholder Claims became property of the bankruptcy estate as of the Petition Date, and the Debtor, through its independent Chief Restructuring Officer, Gil Miller (the "CRO"), has reached two settlement agreements in full satisfaction of the Shareholder Claims (the "Settlements"), which are pending consummation subject to the Bankruptcy Court's approval. After compensating special counsel, the Settlements should result in a payment of approximately $189,731.73 to the Estate.[1]

In addition to the Settlements, the Debtor sold assets under § 363 of the Bankruptcy Code throughout the Bankruptcy Case (the "Asset Sales"), which are summarized as follows: (1) the sale of Intellipay, Inc., its wholly owned subsidiary; (2) the sale of Dynamic Webtools, LLC, its wholly owned subsidiary; (3) the sale of a 51% interest held by the Debtor's wholly owned subsidiary, Headlamp Ventures, LLC, in Asher, LLC; and (4) the auction of surplus assets, including office equipment, supplies, and furnishings.

### 2.2    Liquidating Trust

Outside of the net proceeds from the Asset Sales and the Settlements and other cash of the Debtor, the Debtor believes it has one remaining asset of potential value—its corporate shell.  Under the Plan, the Debtor's Estate and all of its remaining assets will become property of the Liquidating Trust, and a Liquidating Trustee will be appointed to conduct an orderly

---

[1] The Debtor's motion seeking approval of the Settlements is attached hereto as Exhibit C, and parties in interest should refer to the motion for further discussion of the Settlements.

liquidation of the assets with the goal of maximizing returns to creditors.  The Plan proposes that Gil A. Miller, a founding member and principal of Rocky Mountain Advisory, LLC ("RMA"), a Salt Lake City based advisory and professional services firm, will serve as the Liquidating Trustee for the Liquidating Trust and will have overall responsibility for the liquidation.[2]  In particular, the Liquidating Trustee will be responsible for liquidating all remaining assets, including evaluating and prosecuting Causes of Action to the extent appropriate, objecting to Claims as appropriate, and making distributions to creditors.  The Liquidating Trustee will also be responsible for holding and administering all post-confirmation cash and bank accounts of the Liquidating Trust. The proposed Liquidating Trust Agreement is attached as an exhibit to the Plan.

If the Liquidating Trustee enters into an agreement to liquidate the Debtor's corporate shell, then the Liquidating Trustee will do so through a motion to this Court.  Notice of this motion will be provided to all creditors, shareholders, the Securities and Exchange Commission, and all other parties in interest, with an opportunity to object to the transaction.  The Liquidating Trustee anticipates that if such a transaction is consummated, it would be through a post-confirmation transaction.  The Liquidating Trustee intends to use his best efforts to provide adequate information to the Debtor's security holders and comply with applicable Federal and state securities laws in connection with any such transaction.  Indeed, pursuant to 28 U.S.C. § 959, the Liquidating Trustee is required to comply with all applicable laws, including the Federal and state securities laws.

Under the Plan, the Liquidating Trustee will be compensated for his efforts from the assets of the Liquidating Trust at his customary hourly rate, plus reimbursement for actual and necessary expenses.  The Debtor believes that Mr. Miller's substantial expertise in performing accounting services in bankruptcy cases and for bankruptcy estates and trustees, and in serving as a trustee in previous bankruptcy cases, will be of great benefit to the Estate.  It is contemplated that Mr. Miller will engage the services of the accounting and advisory firm RMA, and the Debtor's current bankruptcy counsel, Cohne Kinghorn, P.C. ("CK"), to assist him in performing his duties as Liquidating Trustee.  Both RMA and CK previously were approved by Court orders to serve as Professionals for the Debtor in this Bankruptcy Case.

The Liquidating Trustee shall not be obligated to obtain a bond but may do so, in his reasonable business judgment, in which case the expense incurred by such bonding shall be paid by the Liquidating Trust. The Liquidating Trustee has exclusive control over the Liquidating Trust, expects to administer payments to creditors within a year from the date of confirmation, and RMA has separate insurance which could serve to protect creditors in the event that the assets of the Liquidating Trust are lost through any mismanagement by the Liquidating Trustee. For all of those reasons, the Debtor submits that not requiring the Liquidating Trustee to obtain a bond results in only minimal risks to creditors and the Estate, and will ultimately benefit creditors and the Estate vis-à-vis a reduction in costs to the Liquidating Trust.

The Debtor submits that the liquidation of all remaining assets of its Estate through the Liquidation Trust mechanism has the best potential for maximizing the returns to creditors.  The proposed Liquidating Trustee is familiar with the claims against the Debtor and the Debtor's

---

[2] As explained above, Gil Miller currently serves as the Court-approved CRO and financial advisor for the Debtor in this bankruptcy case.

remaining assets as a result of his work as CRO and financial advisor to the Debtor during its Chapter 11 bankruptcy case and will be able to efficiently work with RMA and CK to maximize the proceeds of these assets and to seek the disallowance of any objectionable claims.

### 2.3    Treatment of Unclassified Administrative Expenses and Priority Tax Claims

The Bankruptcy Code provides that certain types of claims should not be placed in voting classes under a chapter 11 plan. Accordingly, under the Plan, Administrative Expense Claims and Priority Tax Claims are not classified but are treated as provided in Article II of the Plan. Holders of such claims are not entitled to vote to accept or reject the Plan. In general, unless otherwise agreed, Allowed Administrative Expense Claims will be paid in full on the later of the date such claims become due in accordance with their terms or the Effective Date of the Plan. In general, Allowed Priority Tax Claims will be paid either (a) upon such terms as may be agreed to between the Debtor and such holder of an Allowed Priority Tax Claim, or (b) in full in Cash on the later of the Effective Date or the date such claim would have been due outside of bankruptcy.

### 2.4    Treatment of Classified Claims and Interests

2.4.1   Class 1 Claims. Class 1 consists of all Allowed Priority Claims[3] against the Debtor. Class 1 is impaired under the Plan, and holders of Allowed Class 1 Claims are entitled to vote to accept or reject the Plan. In general, such claims will be paid in full by no later than the Initial Distribution Date (30 days after the Effective Date). The Debtor presently believes that the Allowed Priority Claims against it will not be substantial. Schedule E of the Debtor's Schedules lists 12 priority claims for "wages" or "profit sharing benefits," no priority claims for taxes or other debts owed to governmental units, and two priority claims that appear to be for wages or profit sharing benefits, but are not specifically designated as such. The Allowed Priority Claims have not yet been paid, but they total no more than $22,000.58 according to the Debtor's amended Schedule E. The IRS has filed a proof of claim (No. 1-1) asserting a Priority Tax Claim in the in the amount of $348.79, but the Debtor believes that the IRS claim is a Priority Tax Claim (discussed above).[4]

2.4.2   Class 2 Claims. Class 2 consists of all General Unsecured Claims against the Debtor. Class 2 is impaired under the Plan, and holders of Allowed Class 2 Claims are entitled to vote to accept or reject the Plan. In general, the Liquidating Trustee shall pay Holders of Class 2 Claims in full satisfaction of their Claims: (i) 80% of the amount of their

---

[3] The Plan defines Priority Claims as all claims entitled to priority under Section 507(a) of the Bankruptcy Code other than Administrative Expense Claims and Priority Tax Claims.

[4] The Bar Date (deadline for filing proofs of claim) was June 29, 2016 for all claims other than those of a governmental unit, and was August 22, 2016 for claims of a governmental unit. According to the Court's Claims Register as of August 29, 2016, 14 proofs of claim were filed against the Debtor through August 29, with a total amount claimed of $1,222,797.84. Out of that amount, $993,108.96 will be disallowed in accordance with the Settlements. The Debtor has not yet fully reviewed and evaluated the filed proofs of claim; thus, the information regarding claims in this Disclosure Statement is derived primarily from the Schedules.

Allowed General Unsecured Claims, in Cash, on the Initial Distribution Date; and (ii) subsequent distribution(s) of a Pro Rata share of the Unsecured Distribution Amount. The Debtor is optimistic, but uncertain, that it will be able to pay all holders of Allowed Class 2 Claims in full. The Debtor's Schedule E (as amended) lists a total of $175,453.67 in General Unsecured Claims.[5]

        2.4.3   <u>Class 3 Interests</u>.  Class 3 consists of all Equity Interests in the Debtor, which consist of common shares of the Debtor. Class 3 is impaired under the Plan, and holders of Allowed Class 3 Interests shall be entitled to vote to accept or reject the Plan. In the event that the Liquidating Trustee can pay in full 100% of Allowed General Unsecured Claims, then the Liquidating Trustee shall make a final, Pro Rata distribution of remaining funds on hand to holders of Equity Interests. Except for the possibility for payments after all other creditors are paid in full, Equity Interests shall retain no interest in the Liquidating Trust.

        **2.5**     **Plan Execution and Implementation**

        2.5.1   <u>Administration of the Estate</u>.  The Liquidating Trustee shall administer the Estate after consummation of the Plan.  The Liquidating Trustee shall hold all rights, powers, and duties of a trustee of the Estate under Chapter 11 of the Bankruptcy Code.  The Liquidating Trustee shall jointly reduce all property of the Estate and Causes of Action to Cash, and distribute such Cash pursuant to the provisions of this Plan.  The Liquidating Trustee shall use such Cash to pay the holders of Claims until such Cash is exhausted. The Liquidating Trustee shall not be obligated to obtain a bond but may do so, in his reasonable business judgment, in which case the expense incurred by such bonding shall be paid by the Liquidating Trust.

        2.5.2   <u>Vesting of Property</u>.  On the Effective Date, the Trust Assets, without any further act or deed of the Liquidating Trustee, or the Bankruptcy Court, shall be transferred from the Debtor to the Liquidating Trust, free and clear of all liens, Claims and interests, and shall become the corpus of the Liquidating Trust.  On and after the Effective Date, the Debtor shall execute and deliver such instruments and other documents as are necessary, appropriate or deemed advisable by the Liquidating Trustee, to transfer title to the Trust Assets to the Liquidating Trust. In the event that the Case is converted to a case under Chapter 7 of the Bankruptcy Code, the Trust Assets shall re-vest in the Chapter 7 estate.

        2.5.3   <u>Liquidation of Remaining Property of the Estate</u>.  Following the Effective Date, the Liquidating Trustee shall conduct an orderly liquidation of the remaining property of the Estate consistent with the terms of the Plan and the Liquidating Trust.

        2.5.4   <u>Sucessor Trustee</u>.  In the event that the Liquidating Trustee resigns, becomes incapacitated, is disqualified, dies, or becomes otherwise unable or unwilling to continue to serve in such capacity, then the Court shall appoint a successor Liquidating Trustee

---

[5] According to the Court's Claims Register as of August 29, 2016, 14 proofs of claim were filed against the Debtor through August 29, with a total amount claimed of $1,222,797.84. Out of that amount, $993,108.96 will be disallowed in accordance with the Settlements. The Debtor has not yet fully reviewed and evaluated the filed proofs of claim; thus, the information regarding claims in this Disclosure Statement is derived primarily from the Schedules.

upon motion of any interested party and notice to all creditors on the Debtor's Bankruptcy Court approved limited mailing matrix.  If no interested party files such a motion within thirty days of the event requiring a successor trustee, then the Office of the United States Trustee shall appoint a successor trustee(s)-.), subject to a motion and notice to all creditors on the Debtor's Bankruptcy Court approved limited mailing matrix. Any such successor trustee(s) must be "disinterested" as defined under § 101(14) of the Bankruptcy Code.

2.5.5    Liquidating Trust. The Liquidating Trust is incorporated herein by reference.  The Liquidating Trust shall be established for and on behalf of Holders of Allowed Claims and shall be treated for federal income tax purposes as a grantor trust with the Debtor being the grantor.

2.5.6    Employment of Professionals. The Liquidating Trustee may employ attorneys, accountants, or other professionals as he may deem appropriate and pay such professionals reasonable fees and expenses.  Professionals employed by the Liquidating Trustee shall not be subject to Bankruptcy Court approval, and their compensation shall not be subject to Bankruptcy Court approval, except as provided in this paragraph. Provided, however, that upon written request the Liquidating Trustee shall provide invoices for the post-confirmation services of professionals to the Office of the United States Trustee or requesting creditors.

2.5.7    Compensation of Liquidating Trustee. The Liquidating Trustee shall receive compensation for his post-confirmation services at the rate of $380 per hour, subject to normal periodic increases.  Post-confirmation Compensation of the Liquidating Trustee shall not be subject to approval of the Bankruptcy Court, and shall be paid in the ordinary course. Provided, however, that upon written request the Liquidating Trustee shall provide invoices for his post-confirmation services to the Office of the United States Trustee.

2.5.8    Termination of Liquidating Trust. Upon liquidation of all Trust Assets, payment of all fees, expenses and taxes of the Liquidating Trust, and final distributions to Holders of Claims and potentially to Holders of Equity Interests, the Liquidating Trust and the responsibilities of the Liquidating Trustee shall terminate.

2.5.9    Destruction of Books and Records. Upon termination of the Liquidating Trust, the Liquidating Trustee may, without further order of the Bankruptcy Court, but subject to any applicable non-bankruptcy law relating to the retention of books and records, may destroy any books and records that the Liquidating Trustee determines are no longer necessary for the implementation of the Plan.

2.5.10   Plan Distributions.  The Liquidating Trustee will make periodic distributions of Cash in the Distribution Account to holders of Allowed Claims by first-class U.S. Mail addressed to such holder as listed on the Schedules as of the Distribution Record Date (which is the Confirmation Date), unless the Liquidating Trustee has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or notice of transfer of claim filed by such holder that provides an address for such holder different from the address reflected on the Schedules.

2.5.11  <u>Objections to Claims</u>.  Unless otherwise ordered by the Court, the Liquidating Trustee or any other party in interest may file and prosecute an objection to any Claim until 180 days after the Effective Date.

2.5.12  <u>Estimation of Claims</u>.  The Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code, and the Bankruptcy Court shall have jurisdiction to estimate such Claim at any time, including, without limitation, during litigation concerning such Claim or an objection to such Claim.

2.5.13  <u>Disputed Claims Reserve</u>.  Disputed Claims are, in general, those Claims as to which a timely objection has been filed but not yet resolved.  The Liquidating Trustee will maintain a Disputed Claims Reserve for such claims equal to the full amount to which holders of such claims would be entitled to receive under the Plan if such claims were Allowed unless the Court orders otherwise.  No distributions will be made on account of a Disputed Claim unless and until such claim becomes an Allowed Claim pursuant to a Final Order.

2.5.14  <u>Debtor's Claims Preserved</u>.  Other than Claims and Causes of Action expressly released under the Plan or any other Final Order of the Bankruptcy Court, any and all of the Debtor and/or the Estate's claims and causes of action against others are preserved under the Plan and vested in the Liquidating Trust and preserved for the Liquidating Trustee to pursue has he deems appropriate.

2.5.15  <u>Executory Contracts and Leases</u>.  On the Effective Date, all executory contracts and unexpired leases to which either Debtor is a party shall be deemed rejected by the Confirmation Order, except for any executory contract or unexpired lease (i) that has been assumed or rejected pursuant to a Final Order of the Bankruptcy Court entered before the Effective Date or (ii) that is the subject of a separate motion to assume or assign or reject filed under Section 365 of the Bankruptcy Code by a Debtor before the Effective Date.  Any claim for damage resulting from contract or lease rejection must be filed with the Court by no later than 30 days after the Confirmation Date.

2.5.16  <u>Reversion of Unclaimed Checks and Disputed Claims Reserve</u>. The following amounts shall revert and be vested in the Estate free and clear of any claim or interest of any holder of a Claim under the Plan: (i) the amount of any checks issued for distributions under the Plan that remain uncashed for a period of ninety days after the date of such distribution, and (ii) to the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of the amount of Cash in the Disputed Claims Reserve attributable to such Disputed Claim over the amount of Cash actually distributed on account of such Disputed Claim.  In addition, if any Holder of a Claim fails to negotiate a check issued for distribution under the Plan for a period of ninety days after such distribution, then such Holder shall be deemed to have waived its Claim and the Liquidating Trustee shall make no further distributions to such Holder under the Plan.

2.5.17  <u>Plan Injunction</u>.  Entry of the Confirmation Order will result in an injunction permanently enjoining all creditors and all other Persons from commencing or continuing, in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtor or its Estate, on account of, or respecting any Claims, debts, rights, Causes of Action or liabilities discharged or treated pursuant to the Plan, except to the

extent expressly permitted under the Plan.  Upon entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present, future, or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

## 3.

## THE DEBTOR

### 3.1    Pre-Petition Financing and Capital Structure

#### 3.1.1   Equity Interests

Equity Interests in the Debtor.  The Debtor is a Nevada corporation owned by its shareholders.  According to its List of Equity Security Holders filed in its bankruptcy case, the Debtor had approximately 312 holders of common shares as of the Petition Date.

#### 3.1.2   Secured Debt

The Debtor listed one Secured Claim totaling approximately $43,426.44 in its Schedule D. The Debtor anticipates that the holder of the Secured Claim will realize on its collateral (an insurance policy refund) prior to the hearing on confirmation of the Plan, and any remaining deficiency will be asserted as a General Unsecured Claim.

#### 3.1.3   Unsecured Debt

The Debtor's Schedule F (as amended) lists General Unsecured Claims totaling $175,453.67.  After subtracting the disallowed claims of the Debtor's former directors and officers, the General Unsecured Claims filed in this case total approximately $229,340.11. The Debtor has not yet examined the filed claims to determine the amount of overlap between the the filed claims and the General Unsecured Claims listed in the Debtor's Schedule F. The Debtor's current estimates of the General Unsecured Claims that might be Allowed in the Bankruptcy Case are as set forth in the Liquidation Analysis attached as Exhibits B(1) and B(2) hereto (discussed below).

### 3.2    The Debtor's Business

As described above, the Debtor was an application service provider and software development firm that developed business software technologies and services for business merchants and organizations using the internet and other technologies.  It specialized in turnkey applications allowing small to medium sized businesses to expand over the internet.  The Debtor's product family provided tools for web site creation, management and maintenance, electronic business storefront hosting and internet payment systems. The Debtor has no remaining business operations after the Asset Sales that took place throughout the Bankruptcy Case.

### 3.3    The Debtor's Assets

#### 3.3.1    Real Property

The Debtor did not own any real property as of the Petition Date (and does not now).

#### 3.3.2    Personal Property

The Debtor's Schedule B lists the personal property it owned as of the Petition Date. Pursuant to the Asset Sales, substantially all of the Debtor's assets have been sold. There is approximately $169,324 in the Debtor's DIP account as of August 29, 2016. The most significant personal property that remains is the Debtor's corporate shell, which the Liquidating Trustee will liquidate under the Plan to the extent he is able.

### 3.4    Significant Events During the Bankruptcy Case.

The Debtor filed its bankruptcy petition on the Petition Date (February 23, 2016). Early in the Bankruptcy Case, the Court entered an order approving the Debtor's application to approve employment of the CRO [Docket No. 22], who has diligently acted to liquidate assets, settle claims, and administer the Debtor's Estate. The most significant events in the case were: (a) approval of the sale of the Debtor's subsidiary Intellipay, Inc. for $140,000 [Docket No. 52]; (b) approval of the sale of a 51% interest in Asher, LLC, held by a subsidiary of the Debtor, for $20,000 [Docket No. 79]; (c) approval of the sale of the Debtor's subsidiary Dynamic Webtools, LLC for $15,000 [Docket No. 107]; (d) approval of the auction of the Debtor's surplus assets [Docket No. 113], which resulted in proceeds totaling $4,105; and (e) the negotiation of the Settlements between the Debtor and its former directors and officers and Mitchell Barlow & Mansfield, P.C., which should result in a payment of $189,731.73 to the Bankruptcy Estate, after accounting for special counsel's fees and costs.

### 4.

### OTHER CONSIDERATIONS

The Plan provides for 100% payment to holders of Allowed Priority Claims and 80% payment to holders of General Unsecured Claims on the Initial Distribution Date, with the potential for additional payments to holders of General Unsecured Claims if the Court approves the Settlements or the Liquidating Trustee finds and liquidates additional assets. The Debtor tentatively believes that holders of Allowed General Unsecured Claims will be paid 100% in satisfaction of their Claims, as shown in Exhibit B(1). Therefore, the Debtor strongly believes that the Plan is in the best interest of all creditors holding Allowed Claims. Further, the Debtor believes that the Plan is feasible and likely to result in less delay than likely alternatives. If the Plan is not confirmed, the most likely alternatives would include: (a) continuation of the Chapter 11 case until an alternative plan of liquidation could be confirmed; or (b) conversion of the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code and liquidation of the Debtor by a Chapter 7 trustee.

### 4.1     Feasibility of the Plan

Pursuant to the Plan, the Liquidating Trustee will administer the Liquidating Trust for the benefit of the Estate's creditors, with such administration to include liquidating any remaining assets, reviewing and objecting to claims, and distributing available funds to holders of Allowed Claims.  The Plan meets the feasibility requirement because there already are sufficient funds in the Estate to pay all Allowed Claims in Class 1 in full, and to make Pro Rata distributions of at least 80% to holders of Allowed Claims in Class 2.  The Liquidating Trustee will attempt to maximize the Pro Rata distributions to be made to holders of such Allowed General Unsecured Claims.

### 4.2     Continuation of the Case

If the Debtor was to continue to administer the Bankruptcy Case without the benefit of a confirmed plan of liquidation, the Debtor believes that creditor recoveries would be eroded as a result of higher professional fees and unforeseeable future events or claims that could arise.  In addition, it is likely that creditors would be delayed in receiving distributions from the Estate.

### 4.3     Alternative Plans of Reorganization

If the Plan is not confirmed, another party in interest in the Bankruptcy Cases could attempt to formulate and propose a different plan or plans.  Such plans might, theoretically, suggest a reorganization and continuation of the Debtor's business, but in reality, after Asset Sales, the Debtor has no ongoing business to reorganize and so it appears that the only feasible Chapter 11 plan would be a plan of liquidation similar to the Plan described by this Disclosure Statement.  To date, the Debtor has not received any concrete suggestions for alternate plans.

### 4.4     Liquidation under Chapter 7

If the Bankruptcy Case was converted to a case under Chapter 7 of the Bankruptcy Code, a Chapter 7 trustee would be elected or appointed to liquidate the assets of the Debtor. The net proceeds of the liquidation, after payment of all administrative expenses, would be distributed to the respective holders of Claims against the Debtor according to the priorities established by the Bankruptcy Code.

Under Chapter 7, a secured creditor whose claim is fully secured would be entitled to full payment, including interest, from the proceeds of the sale of its collateral.  Unless its claim is nonrecourse, a secured creditor whose collateral is insufficient to pay its claim in full would be entitled to assert an unsecured claim for its deficiency.  Claims entitled to priority under the Bankruptcy Code (including administrative expense claims, priority tax claims, and other priority claims) would be paid in full before any distribution to general unsecured creditors.  Funds, if any, remaining after payment of secured claims and priority claims would be distributed pro rata to general unsecured creditors.  If subordination agreements existed and were enforced, senior creditors would be entitled to be paid in full before any distribution to subordinated creditors.

The Debtor believes that a Chapter 7 trustee and his or her new professionals would require significant start-up time and incur significant expenses in order to become as familiar

with the Claims asserted against the Debtor and claims and other Causes of Action belonging to the Debtor as the Debtor and its professionals now are.  Accordingly, the Debtor believes liquidation under the Plan will likely be more prompt and more efficient than under Chapter 7.

### 4.5    Liquidation Analysis

A liquidation analysis for the Debtor comparing liquidation under the Plan with a hypothetical Chapter 7 liquidation is attached hereto as <u>Exhibits B(1) and B(2)</u>.[6]  As in Chapter 7, the proposed Plan would result in a liquidation of assets that will provide a return to creditors according to the priorities established by the Bankruptcy Code.  But, through the Plan, the Liquidating Trustee will make interim distributions to holders of Allowed Claims while he continues to administer and liquidate assets for the benefit of creditors.  Furthermore, the Plan attempts to capitalize on the negotiated nature of Chapter 11 to provide holders of Allowed Claims the most fair and equitable distribution of assets.  As noted above, the Debtor firmly believes that the liquidation contemplated by the Plan will produce a better result for general unsecured creditors through avoidance of Chapter 7 trustee commissions and unnecessary time for a Chapter 7 trustee and his professionals to gain sufficient background knowledge to effectively administer the case.

### 4.6    Risk Factors

Both failure to achieve confirmation of the Plan, and consummation of the Plan, are subject to a number of risks.  These risks include but are not limited to the following:  (i) there is no assurance that the Court will approve the Settlements; (ii) Claims that the Debtor may dispute may be Allowed in full; and (iii) administrative expenses, including but not limited to professional fees and costs, could exceed the Debtor's predictions.  In addition, there are certain risks inherent in the Chapter 11 process.  If certain standards set forth in the Bankruptcy Code are not met, the Bankruptcy Court will not confirm the Plan even if creditors accept the Plan.  Although the Debtor believes that the Plan meets the statutory standards, there can be no assurance that the Bankruptcy Court will reach the same conclusion.  If the Bankruptcy Court determines that such requirements are not met, it could require the Debtor to resolicit acceptances of the Plan, which could delay and/or jeopardize confirmation of the Plan.  The Debtor believes that the solicitation of votes on the Plan will comply with section 1126(b) of the Bankruptcy Code and anticipates that the Bankruptcy Court will confirm the Plan.  However, the Debtor can provide no assurance that modifications of the Plan will not be required to obtain confirmation of the Plan, or that such modifications will not require a re-solicitation of acceptances.  <span style="color:red">The Debtor intends to make final distributions and obtain a final decree closing the Case within a year from the date of an Order confirming the Plan. In the event of any default of</span>

---

[6] The liquidation analysis attached and discussed herein is, by necessity, merely an estimate and requires that many assumptions be made concerning uncertain facts and circumstances, including what claims will be allowed or disallowed (and to what extent), what the proceeds of any Avoidance Actions might be, what the administrative expenses of the Estate will be through the Effective Date, and what the Liquidating Trust administrative expenses will be.  It must be emphasized that the Plan does not guarantee any particular result or any particular distribution to any creditor, and any or all of the estimates and assumptions underlying the liquidation analysis may prove to be incorrect.

the provisions of the Plan, parties in interest are directed to comply with § 11.4 of the Plan for their remedies in the event of such default pursuant to the Plan.

### 4.7    Taxation

#### 4.7.1   Introduction

The following discussion summarizes certain of the important federal income tax consequences of the transactions described herein and in the Plan.  This discussion is for informational purposes only and does not constitute tax advice.  This summary is based upon the Internal Revenue Code and the U.S. Treasury Regulations promulgated thereunder, including judicial authority and current administrative rulings and practice.  Neither the impact on foreign holders of claims and equity interests nor the tax consequences of these transactions under state and local law is discussed.  Also, special tax considerations not discussed herein may be applicable to certain classes of taxpayers, such as financial institutions, broker-dealers, life insurance companies and tax-exempt organizations.  Furthermore, due to the complexity of the transactions contemplated in the Plan, and the unsettled status of many of the tax issues involved, the tax consequences described below are subject to significant uncertainties.  No opinion of counsel has been obtained and no ruling has been requested from the Internal Revenue Service ("IRS") on these or any other tax issues.  There can be no assurance that the IRS will not challenge any or all of the tax consequences of the Plan, or that such a challenge, if asserted, would not be sustained.  **HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE THEREFORE URGED TO CONSULT WITH THEIR TAX ADVISORS REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THE PLAN.**

To ensure compliance with requirements imposed by the IRS in Circular 230, we inform you that, unless we expressly state otherwise in this communication (including any attachments), any tax advice contained in this communication is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing, or recommending to another party any transaction or other matter addressed.

#### 4.7.2   Tax Consequences to the Debtor

Generally, the Plan contemplates the compromise of holders of General Unsecured Claims.  Any income corresponding to the payment of Claims at a discount should not constitute taxable income to the Debtor since the debt forgiveness arises in connection with a case under Title 11 of the United States Code.  The Debtor does not anticipate any tax liability resulting from the Asset Sales or the Settlements; however, any such tax liability may be an administrative expense of the Estate.

#### 4.7.3   Tax Consequences to Creditors

**In General**.  The federal income tax consequences of the implementation of the Plan to a holder of a Claim will depend, among other things, on: (a) whether its Claim constitutes a debt

or security for federal income tax purposes, (b) whether the claimant receives consideration in more than one tax year, (c) whether the claimant is a resident of the United States, (d) whether all the consideration by the claimant is deemed received by that claimant as part of an integrated transaction, (e) whether the claimant reports income using the accrual or cash method of accounting, and (f) whether the holder has previously taken a bad debt deduction or worthless security deduction with respect to the Claim.

**Gain or Loss on Exchange**.  Generally, a holder of an Allowed Claim will realize a gain or loss on the exchange under the Plan of its Allowed Claim for cash and other property in an amount equal to the difference between (i) the sum of the amount of any cash and the fair market value on the date of the exchange of any other property received by the holder (other than any consideration attributable to accrued but unpaid interest on the Allowed Claim), and (ii) the adjusted basis of the Allowed Claim exchanged therefor (other than basis attributable to accrued but unpaid interest previously included in the holder's taxable income). Any gain recognized generally will be a capital gain (except to the extent the gain is attributable to accrued but unpaid interest or accrued market discount, as described below) if the Claim was a capital asset in the hand of an exchanging holder, and such gain would be a long-term capital gain if the holder's holding period for the Claim surrendered exceeded one (1) year at the time of the exchange.

Any loss recognized by a holder of an Allowed Claim will be a capital loss if the Claim constitutes a "security" for federal income tax purposes or is otherwise held as a capital asset. For this purpose, a "security" is a debt instrument with interest coupons or in registered form.

### 4.8    Information Reporting and Backup Withholding

Under the backup withholding rules of the Internal Revenue Code, holders of Claims may be subject to backup withholding at the rate of 28 percent with respect to payments made pursuant to the Plan unless such holder (i) is a corporation or comes within certain other exempt categories and, when required, demonstrates this fact, or (ii) provides a correct taxpayer identification number and certifies under penalties of perjury that the taxpayer identification number is correct and that the holder is not subject to backup withholding because of a failure to report all dividends and interest income.  Any amount withheld under these rules will be credited against the holder's federal income tax liability.  Holders of Claims may be required to establish exemption from backup withholding or to make arrangements with respect to the payment of backup withholding.

### 4.~~9~~4.9  Guarantors and Obligors

To the best of the Debtor's knowledge, there are no guarantors or co-obligors of any of the Debtor's obligations, including unsecured debt.

### 4.10    Post-Confirmation Fees, Reporting, and Final Decree

The Liquidating Trustee shall be responsible for the payment of any post-confirmation fees due pursuant to 28 U.S.C. §1930, including but not limited to quarterly fees owed to the Office of the United States Trustee, and the filing of post-confirmation reports, until a final decree is entered or the Case is converted to one under Chapter 7 of the Bankruptcy Code.

### 4.11    Importance of Obtaining Professional Assistance

**THE FOREGOING IS INTENDED TO BE A SUMMARY ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FEDERAL, STATE, AND FOREIGN TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN MANY AREAS, UNCERTAIN. ACCORDINGLY, EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS STRONGLY URGED TO CONSULT WITH HIS OWN TAX ADVISOR REGARDING SUCH TAX CONSEQUENCES.**

**5.**

**CAUSES OF ACTION**

### 5.1    Preferences

Under the Bankruptcy Code, a debtor may recover certain preferential transfers of property, including cash, made while insolvent during the 90 days immediately prior to the filing of its bankruptcy petition with respect to pre-existing debts, to the extent the transferee received more than it would have in respect of the pre-existing debt had the debtor been liquidated under Chapter 7 of the Bankruptcy Code. In the case of "insiders," the Bankruptcy Code provides for a one-year preference period. There are certain defenses to such recoveries. Transfers made in the ordinary course of the debtor's and transferee's business according to the ordinary business terms in respect of debts less than 90 days before the filing of a bankruptcy are not recoverable. Additionally, if the transferee extended credit subsequent to the transfer (and prior to the commencement of the bankruptcy case), such extension of credit may constitute a defense to recovery, to the extent of any new value, against an otherwise recoverable transfer of property. If a transfer is recovered by the debtor, the transferee has an unsecured claim against the debtor to the extent of the recovery. The Debtor does not believe that the Estate holds any preference claims, especially since Allowed Claims will likely be paid in full in this case. To the extent any such claims exist, they will be prosecuted by the Liquidating Trustee.

### 5.2    Fraudulent Transfers

Under the Bankruptcy Code and various state laws, a debtor may recover certain transfers of property, including the grant of a security interest in property, made while insolvent or which rendered the debtor insolvent. The Debtor does not believe that the Estate holds any fraudulent transfer claims. To the extent any such claims exist, they will be prosecuted by the Liquidating Trustee.

### 5.3    Causes of Action Generally

The actions referred to above are not exhaustive.  The Liquidating Trustee reserves his rights to identify and bring lawsuits based on additional preferences, fraudulent transfers, post-petition transfers, other Avoidance Actions, and any other actions (collectively defined as "Causes of Action" under the Plan).  Any and all avoidance actions and rights pursuant to sections 542, 543, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and all causes of action under state, federal or other applicable law shall be retained and may be prosecuted or settled by the Liquidating Trustee.

Under the Plan, the Liquidating Trustee is vested with the right to object to all Claims asserted against the Estate and the right to pursue all Causes of Action, including without limitation (i) the Estate's Causes of Action asserted in any adversary proceeding which is pending as of the Confirmation Date, and (ii) any and all other claims and Causes of Action that the Debtor holds preconfirmation, including, but not limited to, claims for unpaid accounts receivable and fraudulent transfers.

The Plan provides that unless a claim or Cause of Action against any Person is expressly waived or released in the Plan or any Final Order of the Bankruptcy Court, the Estate expressly reserves such claim or Cause of Action for later adjudication (including without limitation, claims and Causes of Action not specifically identified or which the Debtor may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtor at this time or facts and circumstances which may change or be different from those which the Debtor now believes to exist) and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claims preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such claims or Causes of Action upon or after the confirmation or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such claims or Causes of Action have been expressly released in the Plan or any other Final Order of the Bankruptcy Court.

### 6.

### VOTING PROCEDURES AND REQUIREMENTS

### 6.1    Ballots and Voting Deadline

A ballot to be used to vote to accept or reject the Plan is enclosed with this Disclosure Statement.  A creditor who is voting must (1) carefully review the ballot and instructions thereon, (2) complete and execute the ballot indicating the creditor's vote to either accept or reject the Plan, and (3) return the executed ballot to the address below.

Pursuant to an Order of the Bankruptcy Court, to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received by counsel for the Trustee by 4:00 p.m. Salt Lake City time, on November 7, 2016, at the following address:

George Hofmann
c/o Ballot Tabulation
Cohne Kinghorn
111 East Broadway, 11th Floor
Salt Lake City, Utah 84111

**6.2     Creditors Entitled to Vote**

Each holder of an Allowed Claim in an impaired Class which retains or receives property under the Plan is entitled to vote separately to accept or reject the Plan. For voting purposes, holders of Claims shall be entitled to vote on the Plan in the amount as follows: (1) the amount set forth as a claim in the Schedules that is not listed as contingent, unliquidated, or disputed (excluding scheduled Claims that have been superseded by filed proofs of claims); (2) the amount set forth on a filed proof of claim which has not been disallowed, disqualified, suspended, reduced, or estimated and is not the subject of an unresolved claim objection on file with the Court; or (3) the amount estimated and temporarily allowed for voting purposes pursuant to an order of the Bankruptcy Court.

**6.3     Nonconsensual Confirmation**

If any impaired Class entitled to vote does not accept the Plan, or if any impaired class is deemed to have rejected the Plan, the Debtor reserves the right (i) to seek confirmation of the Plan under Section 1129(b) of the Bankruptcy Code, and (ii) to amend the Plan to the extent necessary to obtain entry of a Confirmation Order.

**6.4     Voting Procedures**

All voting procedures are described in the Bankruptcy Court's Order (i) Approving Disclosure Statement, (ii) Establishing Voting Record Date, (iii) Approving Solicitation Procedures, Forms of Ballots, and Manner of Notice, and (iv) Fixing Deadline for Submitting Ballots, entered on or about October 6, 2016.

*(remainder of this page intentionally left blank)*

**6.5      Vote Required for Class Acceptance.** The Bankruptcy Code defines
acceptance of a plan of reorganization by a class of claims as the acceptance by holders of at
least two-thirds (2/3) in dollar amount and more than one-half in number of the allowed Claims
of the class actually voting to accept or reject the proposed plan of reorganization.  **THE
DEBTOR STRONGLY URGES ALL IMPAIRED CREDITORS TO VOTE TO ACCEPT THE
PLAN**.

Dated this ~~29th~~6th day of ~~August~~October, 2016.

**Cohne Kinghorn, P.C.**

 /s/ George B. Hofmann
George B. Hofmann
Steven C. Strong
Jeffrey L. Trousdale
Attorneys for Pacific WebWorks, Inc.

**Pacific WebWorks, Inc.**

 /s/ K. Lance Bell
By: K. Lance Bell
Its:  President

# Exhibit A

### Debtor's Chapter 11 Plan of Liquidation Dated October 5, 2016

### (The Plan has been filed separately)

George B. Hofmann (10005)
Steven C. Strong (6340)
Jeffrey L. Trousdale (14814)
**Cohne Kinghorn, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300
Facsimile:  (801) 363-4378

Attorneys for Debtor-in-Possession
Pacific WebWorks, Inc.

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re<br><br>PACIFIC WEBWORKS, INC.,<br><br>       Debtor. | Bankruptcy No.  16-21223 (WTT)<br><br>Chapter 11 |

## PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Dated:  October 5, 2016

Pacific WebWorks, Inc. hereby proposes the following plan of liquidation under Section 1121 of Title 11 of the United States Code.

## ARTICLE I

## DEFINITIONS AND CONSTRUCTION OF TERMS

For purposes of this Plan, the following terms shall have the meanings specified in this Article I.  A term used but not defined herein, which is also used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. Wherever from the context it appears appropriate, each term stated shall include both the singular and the plural, and pronouns shall include the masculine, feminine and neuter, regardless of how stated.  The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Section, sub-Section or clause contained in the Plan.  The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the terms of this Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

"Administrative Expense Claim" shall mean a Claim that is Allowed under Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including, without limitation,

(a)     fees and expenses of Professionals Allowed pursuant to an Order of the Bankruptcy Court, and

(b)     all fees and charges assessed against the Estates pursuant to 28 U.S.C. § 1930.

"Allowed" shall mean, with reference to any Claim:

(a)     a Claim that has been listed by the Debtor in its Schedules and (i) is not listed as disputed, contingent or unliquidated, and (ii) is not a Claim as to which a proof of claim has been filed;

(b)     a Claim as to which a timely proof of claim has been filed by the Bar Date and either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been allowed (whether in whole or in part) by a Final Order;

(c)     a Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code and allowed in accordance with Section 502(h) of the Bankruptcy Code; or

(d)    any Claim expressly allowed under this Plan or pursuant to the Confirmation Order.

"Avoidance Actions" shall mean Causes of Action arising or held by the Estate under Sections 502, 510, 541, 544, 545, 547, 548, 549, 550 or 553 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws.

"Bankruptcy Case" shall mean the Debtor's case pending in the Bankruptcy Court.

"Bankruptcy Code" shall mean Title 11 of the United States Code, as amended from time to time, as applicable to the Bankruptcy Cases.

"Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Utah in which the Bankruptcy Cases are pending and, to the extent of any reference under 28 U.S.C. § 157, the unit of such District Court specified pursuant to 28 U.S.C. § 151.

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075, and any local rules of the Bankruptcy Court.

"Bar Date" shall mean: (i) June 29, 2016 with respect to a Claim against the Estate other than a Claim of a Governmental Unit; and (ii) August 22, 2016 with respect to a Claim against the Estate of a Governmental Unit.

"Business Day" shall mean any day other than a Saturday, Sunday or legal holiday recognized in the State of Utah.

"Cash" shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks and money orders).

"Causes of Action" shall mean, without limitation, any and all actions, causes of action, defenses, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, Claims or proceedings to recover money or property and demands of any nature whatsoever, whether known or unknown, in law, equity or otherwise, including, without limitation, Avoidance Actions.

"Claim" shall mean a claim against a Person or its property as defined in Section 101(5) of the Bankruptcy Code, including, without limitation, (i) any right to payment, whether or not such right is reduced to judgment, and whether or not such right is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"Class" shall mean those classes designated in Article III of this Plan.

"Confirmation Date" shall mean the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket in the Bankruptcy Case.

"Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of the Bankruptcy Code, and any supplementary orders of the Bankruptcy Court issued in furtherance of the Plan.

"Contingent or Unliquidated Claim" shall mean any Claim for which a proof of claim has been filed with the Bankruptcy Court but which was not filed in a sum certain, or which has not occurred and is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed.

"Debtor" shall mean Pacific WebWorks, Inc.

"Disclosure Statement" shall mean the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, in the form approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

"Disputed Claim" shall mean:

(a)    if no proof of claim relating to a Claim has been filed, a claim that is listed in the Schedules as unliquidated, disputed or contingent; or

(b)    if a proof of claim relating to a Claim has been filed, a Claim as to which a timely objection or request for estimation, or request to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, has been made, or which is otherwise disputed by the Debtor, or the Liquidating Trustee in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Final Order; or

(c)    a Claim which is a Contingent or Unliquidated Claim.

"Disputed Claim Amount" shall mean the amount set forth in the proof of claim relating to a Disputed Claim or an amount estimated pursuant to an order of the Bankruptcy Court in respect of a Disputed Claim in accordance with Section 502(c) of the Bankruptcy Code.

"Disputed Claims Reserve" shall have the meaning set forth in Section 6.4 hereof.

"Distribution Record Date" shall mean the Confirmation Date.

"Effective Date" shall mean the date which is 30 days after the Confirmation Date, or if such date is not a Business Day, the next succeeding Business Day;

provided, however, that if, as of such date, all conditions precedent to the occurrence of the Effective Date set forth in Section 9.1 of the Plan have not been satisfied or waived, then the first Business Day immediately following the day upon which all such conditions have been satisfied or waived.

"Equity Interest" shall mean the interest of any holder of any stock in the Debtor, and any and all options, warrants and rights, contractual or otherwise, to acquire any stock in the Debtor, as such interests exist immediately prior to the Effective Date.

"Estate" shall mean the estate created in the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

"Final Order" shall mean an order or judgment which has not been reversed, stayed, modified or amended and, as to which (i) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending, or (ii) if appeal, review, reargument or certiorari of the order has been sought, the order has been affirmed or the request for review, reargument or certiorari has been denied and the time to seek a further appeal, review, reargument or certiorari has expired, and as a result of which such order shall have become final and nonappealable in accordance with applicable law; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

"General Unsecured Claim" shall mean a Claim that is not entitled to priority of payment under Section 507 of the Bankruptcy Code.

"Initial Distribution Date" shall mean the date that is 30 days after the Effective Date, or the next succeeding Business Day if such thirtieth day is not a Business Day.

"Liquidating Trust" shall mean the Liquidating Trust Agreement attached to this Plan as Exhibit 1.

"Liquidating Trustee" shall mean Gil A. Miller, in his capacity as the Liquidating Trustee under the Liquidating Trust, and any successor trustee appointed pursuant to this Plan.

"Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, Governmental Unit or political subdivision thereof.

"Petition Date" shall mean February 23, 2016.

"Plan" shall mean this Plan of Liquidation Under Chapter 11 of the Bankruptcy Code, including, without limitation, the exhibits, supplements, appendices and schedules hereto, either in their present form or as the same may be altered, amended or modified from time to time.

"Priority Claims" shall mean any and all Claims (or portions thereof), if any, entitled to priority under Section 507(a) of the Bankruptcy Code other than Administrative Expense Claims.

"Priority Tax Claims" shall mean any Claim of a Governmental Unit entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

"Pro Rata" shall mean a proportionate share of the total distribution made at any particular time under this Plan to the holders of Allowed Claims in a Class, such that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the total of all Allowed Claims in such Class.

"Professionals" shall mean (i) those Persons employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) those Persons for which compensation and reimbursement is allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

"Schedules" shall mean the schedules of assets and liabilities, the list of holders of interests and the statements of financial affairs filed by the Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists and statements have been or may be supplemented or amended from time to time.

"Trust Assets" shall have the meaning ascribed that term in the Liquidating Trust.

"Unsecured Distribution Amount" shall mean the amount, as determined from time to time by the Liquidating Trustee, available for distributions to holders of General Unsecured Claims, after payment or reserve is made for distributions to holders of Claims in Class 1, and after reserving a sufficient amount, as determined by the Liquidating Trustee, sufficient to satisfy existing and anticipated fees and expenses of Professionals, and to establish reserves, as necessary, for distributions to holders of Disputed General Unsecured Claims.

## ARTICLE II

## TREATMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS AND ALLOWED PRIORITY TAX CLAIMS

2.1 **Non-Classification**. As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified for the purposes of voting on, or receiving distributions under, the Plan. All such Claims are instead treated separately in accordance with the terms in this Article II.

**2.2   Administrative Expense Claims.**

(a)   General.  Except as otherwise agreed to by the Debtor and the holder of an Allowed Administrative Expense Claim, each such holder shall be paid in full in Cash on the later of (i) the date such Allowed Administrative Expense Claim becomes due in accordance with its terms, and (ii) the Effective Date.  If the Debtor disputes any portion of an Administrative Expense Claim, the Debtor shall pay such Claim within 30 days after the entry of a Final Order with respect to the allowance of such disputed Administrative Expense Claim.

(b)   U.S. Trustee's Fees.  The United States Trustee's quarterly fees shall be paid in full without prior approval pursuant to 28 U.S.C. § 1930 on or before the Effective Date.

(c)   Professional Compensation and Expense Reimbursement Claims.

(1)   Each Professional may request that its fees and expenses be paid in accordance with the procedures set forth in the order of the Bankruptcy Court approving the Disclosure Statement.  Such Professional shall file a final application for the allowance of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date within thirty days of the Effective Date. Any award granted by the Bankruptcy Court shall be paid (i) within ten days of the entry of the order of the Bankruptcy Court approving such award, unless a stay is obtained, or (ii) upon such other terms as may be mutually agreed upon between such holder of an Allowed Administrative Expense Claim and the Debtor.

(2)   All fees and expenses of Professionals for services rendered after the Effective Date in connection with the Bankruptcy Cases and the Plan (including those on behalf of the Liquidating Trustee), shall be paid by the Liquidating Trustee subject to the terms and procedures specified in the Liquidating Trust, without the need for further Bankruptcy Court authorization or entry of a Final Order.

**2.3   Priority Tax Claims.**  At the sole election of the Liquidating Trustee, each holder of an Allowed Priority Tax Claim shall be paid either (i) upon such terms as may be agreed to between the Debtor and such holder of an Allowed Priority Tax Claim, or (ii) in full in Cash on the later of the Effective Date or the date that such Allowed Priority Tax Claim would have been due if the Bankruptcy Case had not been commenced.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

Claims, other than Administrative Expense Claims and Priority Tax Claims, shall be classified for all purposes, including voting on, confirmation of, and distribution pursuant to the Plan, as follows:

Class 1 – <u>Priority Claims</u>.  Class 1 shall consist of all Allowed Priority Claims.

Class 2 – <u>General Unsecured Claims</u>.  Class 2 shall consist of all Allowed General Unsecured Claims.

Class 3 – <u>Equity Interests</u>.  Class 3 shall consist of all Equity Interests in the Debtor.

**ARTICLE IV**

**TREATMENT OF CLAIMS AND EQUITY INTERESTS**

**4.1     Class 1 - Priority Claims**

(a)     <u>Impairment and Voting</u>.  Class 1 is impaired under the Plan. Holders of Class 1 Claims shall be entitled to vote to accept or reject the plan.

(b)     <u>Distributions</u>.  The Liquidating Trustee shall pay Holders of Class 1 Claims in full satisfaction of their Claims 100% of the principal amount of their Claims on the Initial Distribution Date.

**4.2     Class 2 - General Unsecured Claims**

(a)     <u>Impairment and Voting</u>.  Class 2 is impaired under the Plan. Holders of Class 2 Claims shall be entitled to vote to accept or reject the Plan.

(b)     <u>Distributions</u>.  The Liquidating Trustee shall pay Holders of Class 2 Claims in full satisfaction of their Claims (i) 80% of the amount of their Allowed General Unsecured Claims, in Cash, on the Initial Distribution Date; and (ii) subsequent distribution(s) of a Pro Rata share of the Unsecured Distribution Amount.

(c)     <u>Transferees of Claims</u>.  In the event that a Person has become the transferee of an Allowed General Unsecured Claim after the Petition Date and before the date set by the Court for determining the identity of the holders of Claims entitled to vote on the Plan, such transferee shall be entitled to a separate vote pursuant to this Section for each such Allowed General Unsecured Claim.  In the event that a person or entity has become the transferee of an Allowed General Unsecured Claim after the Petition Date and before the Distribution Record Date, such transferee shall be entitled to a distribution pursuant to this Section for each such Allowed General Unsecured Claim.

**4.3     Class 3 – Equity Interests in the Debtor**

(a)     <u>Impairment</u>.  Class 3 is impaired under the Plan.  In the event that the Liquidating Trustee can pay in full 100% of Allowed General Unsecured Claims,

then the Liquidating Trustee shall make a final, Pro Rata distribution of remaining funds on hand to holders of Equity Interests.

      (b)    <u>Voting</u>.  Each holder of an Equity Interest in the Debtor shall be entitled to vote to accept or reject the Plan.

## ARTICLE V

## MEANS FOR EXECUTION OF THE PLAN

    **5.1**    <u>**Administration of the Estate.**</u>  The Liquidating Trustee shall administer the Estate after consummation of the Plan.  The Liquidating Trustee shall hold all rights, powers, and duties of a trustee of the Estate under Chapter 11 of the Bankruptcy Code.  The Liquidating Trustee shall jointly reduce all property of the Estate and Causes of Action to Cash, and distribute such Cash pursuant to the provisions of this Plan.  The Liquidating Trustee shall use such Cash to pay the holders of Claims until such Cash is exhausted.  The Liquidating Trustee shall not be obligated to obtain a bond but may do so, in his reasonable business judgment, in which case the expense incurred by such bonding shall be paid by the Liquidating Trust.

    **5.2**    <u>**Vesting of Property**</u>.  On the Effective Date, the Trust Assets, without any further act or deed of the Liquidating Trustee, or the Bankruptcy Court, shall be transferred from the Debtor to the Liquidating Trust, free and clear of all liens, Claims and interests, and shall become the corpus of the Liquidating Trust.  On and after the Effective Date, the Debtor shall execute and deliver such instruments and other documents as are necessary, appropriate or deemed advisable by the Liquidating Trustee, to transfer title to the Trust Assets to the Liquidating Trust. In the event that the Case is converted to a case under Chapter 7 of the Bankruptcy Code, the Trust Assets shall re-vest in the Chapter 7 estate.

    **5.3**    <u>**Liquidation of Remaining Property of Estates**</u>.  Following the Effective Date, the Liquidating Trustee shall conduct an orderly liquidation of the remaining property of the consolidated Estate consistent with the terms of the Plan and the Liquidating Trust.

    **5.4**    <u>**Sucessor Trustee**</u>.  In the event that the Liquidating Trustee resigns, becomes incapacitated, is disqualified, dies, or becomes otherwise unable or unwilling to continue to serve in such capacity, then the Court shall appoint a successor Liquidating Trustee upon motion of any interested party and notice to all creditors on the Debtor's Bankruptcy Court approved limited mailing matrix.  If no interested party files such a motion within thirty days of the event requiring a successor trustee, then the Office of the United States Trustee shall appoint successor trustee(s).a successor trustee(s), subject to a motion and notice to all creditors on the Debtor's Bankruptcy Court approved limited mailing matrix. Any such successor trustee(s) must be "disinterested" as defined under § 101(14) of the Bankruptcy Code.

**5.5    Liquidating Trust**. The Liquidating Trust is incorporated herein by reference.  The Liquidating Trust shall be established for and on behalf of Holders of Allowed Claims and shall be treated for federal income tax purposes as a grantor trust with the Debtor being the grantor.

**5.6    Employment of Professionals**. The Liquidating Trustee may employ attorneys, accountants, or other professionals as he may deem appropriate and pay such professionals reasonable fees and expenses.  Professionals employed by the Liquidating Trustee shall not be subject to Bankruptcy Court approval, and their compensation shall not be subject to Bankruptcy Court approval, except as provided in this paragraph.  Provided, however, that upon written request the Liquidating Trustee shall provide invoices for the post-confirmation services of professionals to the Office of the United States Trustee or requesting creditors.

**5.7    Compensation of Liquidating Trustee**. The Liquidating Trustee shall receive compensation for his post-confirmation services at the rate of $380 per hour, subject to normal periodic increases.  Post-confirmation Compensation of the Liquidating Trustee shall not be subject to approval of the Bankruptcy Court, and shall be paid in the ordinary course.  Provided, however, that upon request the Liquidating Trustee shall provide invoices for his post-confirmation services to the Office of the United States Trustee.

**5.8    Termination of Liquidating Trust**. Upon liquidation of all Trust Assets, payment of all fees, expenses and taxes of the Liquidating Trust, and final distributions to Holders of Claims and potentially to Holders of Equity Interests, the Liquidating Trust and the responsibilities of the Liquidating Trustee shall terminate.

**5.9    Destruction of Books and Records**. Upon termination of the Liquidating Trust, the Liquidating Trustee may, without further order of the Bankruptcy Court, but subject to any applicable non-bankruptcy law relating to the retention of books and records, may destroy any books and records that the Liquidating Trustee determines are no longer necessary for the implementation of the Plan.

## ARTICLE VI

## IMPLEMENTATION OF THE PLAN

**6.1    Method of Distributions Under the Plan.**

(a)    In General.  Subject to Bankruptcy Rule 9010, all distributions under the Plan to be made by the Liquidating Trustee to the holder of each Allowed Claim shall be mailed by first class mail, postage prepaid, to the address of such holder as listed on the Schedules as of the Distribution Record Date, unless the Liquidating Trustee has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or notice of transfer of claim filed by such holder that

provides an address for such holder different from the address reflected on the Schedules.  The Liquidating Trustee shall have no obligation to locate such holders whose distributions or notices are properly mailed but nevertheless returned.  In the event that distributions are made to Class 3 Interest Holders, the Liquidating Trustee shall make reasonable efforts to locate such holders whose addresses are not included on the List of Equity Security Holders currently on file with the Court. In the event that the Liquidating Trustee cannot locate such holders, the Cash that would otherwise be distributed to such holders shall be donated to a charitable organization which is a qualified tax exempt entity under Internal Revenue Code § 501(c)(3).

(b)     Form of Distributions.  Any payment of Cash made by the Liquidating pursuant to the Plan shall be made by check.

(b)     Form of Distributions.  Any payment of Cash made by the Liquidating pursuant to the Plan shall be made by check; *provided however*, that after the occurrence of the Effective Date, the Liquidating Trustee is not obligated to make any Cash payment under the Plan unless the payment exceeds ten dollars ($10); *provided further*, that Cash equal to 100% of the distributions to which the holder of a Claim or Interest would be entitled under the Plan if the payment to such holder was less than or equal to ten dollars ($10) shall be maintained in a reserve (the "Small Payment Reserve") for the benefit of such holder until an aggregate of at least ten dollars ($10) is payable to such holder and at such time the holder shall receive a payment equal to 100% of the distributions to which it would otherwise be entitled.

(c)     Distributions to be on Business Days.  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d)     Distributions to Holders as of the Distribution Record Date.  As of the close of business on the Distribution Record Date, the claims register shall be closed.  The Liquidating Trustee shall have no obligation to recognize any transfer of any Claims occurring after the close of business on the Distribution Record Date, and shall instead be entitled to recognize and deal for all purposes under the Plan with only those holders of record as of the close of business on the Distribution Record Date.

(e)     Donation of De Minimus Amounts.  In the event that the Estate has been fully administered, and: (i) the Estate has Cash on hand in an amount such that the cost to make a distribution to creditors would equal or exceed the amount on hand for distribution; or (ii) the holder of a Claim or Interest has not reached the ten dollars ($10) minimum such that the Cash to pay its Claim or Interest remains in the Small Payment Reserve, the Liquidating Trustee may donate the Estate's remaining Cash to a charitable organization which is a qualified tax exempt entity under Internal Revenue Code § 501(c)(3).

6.2     Objections to Disputed Claims.  Any objections to Claims against the Estate may be prosecuted by the Liquidating Trustee, or any other party in interest. Except as otherwise provided by order of the Bankruptcy Court, the Liquidating Trustee,

or any other party in interest may file an objection to any Claim until 180 days after the Effective Date.

**6.3    Estimation of Claims.**  The Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code, and the Bankruptcy Court shall have jurisdiction to estimate such Claim at any time, including, without limitation, during litigation concerning such Claim or an objection to such Claim.  The Liquidating Trustee shall be entitled to request that the Bankruptcy Court determine either the Allowed amount of such Claim or a maximum limitation on such Claim.  If the Bankruptcy Court determines the maximum limitation of such Claim, such determination shall not preclude the Liquidating Trustee from pursuing any additional proceedings to object to any ultimate payment of such Claim.  If the Bankruptcy Court determines the Allowed amount of such Claim, the amount so determined shall be deemed the amount of the Disputed Claim for all purposes under this Plan.  All such proceedings are cumulative and not exclusive remedies.

**6.4    Disputed Claims Reserve.**

(a)    **Establishment.**  The Liquidating Trustee shall maintain a reserve (the "Disputed Claims Reserve") equal to 100% of the distributions to which holders of Disputed Claims would be entitled under the Plan if such Disputed Claims were Allowed Claims or such lesser amount as required by a Final Order.

(b)    **Distributions Upon Allowance of Disputed Claims.**  The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the Initial Distribution Date shall receive distributions of Cash from the Disputed Claims Reserve as soon as practical following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order.  Such distributions shall be made in accordance with the Plan based upon the distributions that would have been made to such holder under the Plan if the Disputed Claim had been an Allowed Claim on or prior to the Initial Distribution Date.  No holder of a Disputed Claim shall have any claim against the Disputed Claims Reserve or the Liquidating Trustee with respect to such Claim until such Disputed Claim shall become an Allowed Claim, and no holder of a Disputed Claim shall have any right to interest on such Disputed Claim.

**6.5    Reversion of Unclaimed Checks and Disputed Claims Reserve; Deemed Waiver of Claims by Failure to Negotiate Distribution Check.**  The following amounts shall revert and be vested in the Estate free and clear of any claim or interest of any holder of a Claim under the Plan: (i) the amount of any checks issued for distributions under the Plan that remain uncashed for a period of ninety days after the date of such distribution, and (ii) to the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of the amount of Cash in the Disputed Claims Reserve attributable to such Disputed Claim over the amount of Cash actually distributed on account of such Disputed Claim.  In addition, if any Holder of a Claim fails to negotiate a check issued for distribution under the Plan for a period of ninety days after such distribution, then

such Holder shall be deemed to have waived its Claim and the Liquidating Trustee shall make no further distributions to such Holder under the Plan.

**6.6**    **Retention and Preservation of Claim Objections and Causes of Action**.  Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code,  upon entry of the Confirmation Order, the Liquidating Trustee's rights to object to all Claims and Interests asserted against the Estate and all of the Debtor's or Estate's Causes of Action, including without limitation: (1) preference actions under Section 547 of the Bankruptcy Code; (2) Causes of Action asserted in any adversary proceeding which is pending as of the Confirmation Date; (3) all Claims and Causes of Action disclosed in the Schedules which are incorporated herein by reference; and (4) any and all other Claims and Causes of Action that the Debtor holds preconfirmation, including, but not limited to, Claims for unpaid accounts receivable and fraudulent transfer, shall vest in the Estate.

Unless a Claim or Cause of Action against any Person is expressly waived or released in the Plan or any Final Order of the Bankruptcy Court, the Estate expressly reserve such Claim or Cause of Action for later adjudication (including without limitation, Claims and Causes of Action not specifically identified or which the Liquidating Trustee may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Liquidating Trustee at this time or facts and circumstances which may change or be different from those which the Liquidating Trustee now believe to exist) and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claims preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Claims or Causes of Action upon or after the confirmation or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such Claims or Causes of Action have been expressly released in the Plan or any other Final Order of the Bankruptcy Court.

## ARTICLE VII

## VOTING ON THE PLAN

**7.1**    **Voting of Claims**.  Each holder of an Allowed Claim in an impaired Class which retains or receives property under the Plan shall be entitled to vote separately to accept or reject the Plan and indicate such vote on a duly executed and delivered ballot as provided in such order as is entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan.

**7.2**    **Nonconsensual Confirmation**.  If any impaired Class entitled to vote shall not accept the Plan by the requisite statutory majorities provided in Sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Plan, the Debtor reserves the right (i) to confirm the Plan

under Section 1129(b) of the Bankruptcy Code, and (ii) to amend the Plan in accordance with Section 11.6 hereof to the extent necessary to obtain entry of a Confirmation Order.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1    Executory Contracts and Unexpired Leases**.  On the Effective Date, all executory contracts and unexpired leases to which the Debtor is a party shall be deemed rejected as of the Effective Date, except for an executory contract or unexpired lease that (i) has been assumed or rejected pursuant to a Final Order of the Bankruptcy Court entered before the Effective Date or (ii) is the subject of a separate motion to assume or assign or reject filed under Section 365 of the Bankruptcy Code by the Debtor before the Effective Date.

**8.2    Approval of Rejection of Executory Contracts and Unexpired Leases**. Entry of the Confirmation Order shall constitute the approval, pursuant to Section 365(a) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected as of the Effective Date of the Plan.

**8.3    Rejection Damage Claims**.  If the rejection of an executory contract or unexpired lease by the Debtor pursuant to this Article VIII results in a Claim for damages to the other party or parties to such contract or lease, any Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estate, or their respective properties or agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served on the Liquidating Trustee on or before 30 days following the Confirmation Date.  Unless otherwise ordered by the Bankruptcy Court or provided in the Plan, all such Claims for which proofs of claim are timely filed will be treated as General Unsecured Claims subject to the provisions of the Plan.  The Liquidating Trustee shall have the right to object to any such rejection damage claims filed in accordance with this Section.

# ARTICLE IX

## CONDITIONS PRECEDENT TO EFFECTIVE DATE

**9.1** **Conditions Precedent to Effectiveness**.  The Plan shall not become effective, and the Effective Date shall not occur, unless and until the following conditions shall have been satisfied or waived:

(a)      the Confirmation Order, in form and substance reasonably acceptable to the Debtor, shall have been entered by the Bankruptcy Court and shall have become a Final Order;

(b)      all actions, other documents and agreements necessary to implement the Plan shall have been executed, delivered and, if necessary, properly recorded, and shall have become effective;

(c)      the Estate shall have sufficient Cash to meet all Cash funding obligations under the Plan required to be made on the Effective Date and the Initial Distribution Date.

**9.2** **Failure of Conditions Precedent**.  Notwithstanding anything in this Plan to the contrary, the conditions set forth in Section 9.1 above must be satisfied or waived on or before December 5, 2016.  In the event that the conditions set forth in Section 9.1 above are not satisfied on or before December 5, 2016, then the Plan shall be deemed revoked and withdrawn, the Confirmation Order shall be deemed vacated, and Section 11.8 of the Plan shall apply.

**9.3** **Waiver of Conditions**.  The Debtor may waive one or more of the conditions precedent to the effectiveness of the Plan set forth in Section 9.1 above, except that the Debtor may not waive the condition that the Estate will have sufficient Cash to meet all payment and funding obligations under the Plan on the Effective Date and the Initial Distribution Date.

# ARTICLE X

## RETENTION OF JURISDICTION

**10.1** **Retention of Jurisdiction**.  After the Effective Date, the Bankruptcy Court shall have exclusive jurisdiction of the following specified matters arising out of, and related to, the Bankruptcy Cases and the Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code:

(a)      to hear and determine any and all objections to the allowance of any Claims or any controversies as to the classification of any Claims or estimate any Disputed Claim;

(b)      to hear and determine any and all applications by Professionals for compensation and reimbursement of expenses;

(c)      to hear and determine any and all pending applications for the rejection or assumption of executory contracts and unexpired leases, and fix and allow any Claims resulting therefrom;

(d)      to enforce the provisions of the Plan subject to the terms thereof;

(e)      to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan;

(f)      to determine any Claim or liability to a Governmental Unit which may be asserted as a result of the transactions contemplated herein;

(g)      to hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code; and

(h)      to determine such other matters as may be provided for in the Confirmation Order.

## ARTICLE XI

## MISCELLANEOUS

**11.1   Continuation of Injunctions or Stays Until Effective Date**.  All injunctions or stays provided for in the Bankruptcy Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**11.2   Injunction Relating to the Plan**.  As of the Effective Date, all Persons are hereby permanently enjoined from commencing or continuing, in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtor or its Estate, on account of, or respecting any Claims, debts, rights, Causes of Action or liabilities discharged or treated pursuant to the Plan, except to the extent expressly permitted under the Plan.  Upon entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present, future, or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

**11.3   Bar Date for Administrative Claims**.  All applications for allowance of Administrative Claims other than (a) fees and expenses of Professionals Allowed pursuant to an Order of the Bankruptcy Court, and (b) fees and charges assessed against the Estates pursuant to 28 U.S.C. § 1930, shall be filed not later than thirty days after the Effective Date.  All Administrative Claims not filed within thirty days after

{00299247.DOCX / 2}                               15

the Effective Date shall be barred.  The deadline in the preceding sentence shall be construed and have the same force and effect as a statute of limitations.  The Liquidating Trustee shall provide notice to all creditors listed on the Bankruptcy Court approved limited mailing matrix of this bar date within ten days after the Effective Date. The Bankruptcy Court shall determine all Administrative Claims.

**11.4**   **Default of Plan**.  In the event of any default of the provisions of this Plan, a creditor or party in interest aggrieved by such default may provide written notice to the Liquidating Trustee.  The notice of default must describe with specificity the nature of the default alleged and the steps required to cure such default.  The Liquidating Trustee shall have thirty days after receipt of notice of default to cure such default.  If the default is not cured within thirty days after receipt of a notice of default, then a creditor or party in interest aggrieved by such default may apply to the Bankruptcy Court to compel compliance with the applicable provisions of the Plan.  The Bankruptcy Court, after notice and a hearing, shall determine whether a default occurred, and if a default occurred, whether such default has been cured.  Upon finding a material default, the Bankruptcy Court may issue such orders as may be appropriate, including an order compelling compliance with the pertinent provisions of the Plan or an order converting the case to one under Chapter 7 of the Bankruptcy Code.

**11.5**   **Setoffs**.  Except as otherwise provided in this Plan, nothing contained in this Plan shall constitute a waiver or release by the Estate of any rights of setoff the Estate may have against any Person.

**11.6**   **Amendment or Modification of the Plan**.  Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with Section 1125 of the Bankruptcy Code.  The Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. The Debtor may, without notice to holders of Claims insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in this Plan and any exhibit hereto.

**11.7**   **Severability**.  If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon the request of the Debtor, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable,

consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alternation or interpretation.  The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable according to its terms.

**11.8    Revocation or Withdrawal of the Plan**.  The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Estate or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Estates.

**11.9    Binding Effect**.  The rights, duties and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

**11.10    Notices**.  All notices, requests and demands to or upon the Liquidating Trustee shall only be effective if in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and confirmed, addressed as follows:

If to the Liquidating Trustee:

Gil A. Miller
Rocky Mountain Advisory
215 South State Street, Suite 550
Salt Lake City, Utah 84111

with a copy to:

George Hofmann
Cohne Kinghorn, P.C.
111 East Broadway, 11th Floor
Salt Lake City, Utah 84111
Tel: (801) 363-4300
Fax: (801) 363-4378

**11.13    Governing Law**.  Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, the rights and obligations arising under this

{00299247.DOCX / 2}                                    17

Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Utah, without giving effect to the principles of conflicts of law of such jurisdiction.

**11.14  Post-Confirmation Fees, Reporting, and Final Decree**.  The Liquidating Trustee shall be responsible for the payment of any post-confirmation fees due pursuant to 28 U.S.C. §1930, including but not limited to quarterly fees owed to the Office of the United States Trustee, and the filing of post-confirmation reports, until a final decree is entered or the Case is converted to one under Chapter 7 of the Bankruptcy Code.

**11.15  Headings**.  Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

**11.16  Filing of Additional Documents**.  On or before substantial consummation of the Plan, Debtor or the Liquidating Trustee shall file with the Bankruptcy Court any agreements or other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**11.17  Inconsistency**.  In the event of any inconsistency between the Plan and the Disclosure Statement, or any other instrument or document created or executed pursuant to the Plan, the terms of the Plan shall govern.

Dated:      ~~August 19~~October 5, 2016


COHNE KINGHORN
*A Professional Corporation*


/s/  George Hofmann
GEORGE B. HOFMANN
STEVEN C. STRONG
JEFFREY L. TROUSDALE
Attorneys for the Debtor

{00299247.DOCX / 2}                                                     18

# Exhibits B-1 and B-2

**Liquidation Analysis Under Chapter 11 Compared with Liquidation
Analysis Under Chapter 7**

# Exhibit C

## Motion to Approve Settlements